**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF CREVE COEUR, MISSOURI, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DIRECTV, LLC, DISH NETWORK CORP., and DISH NETWORK, L.L.C.,<br><br>*Defendants*. | CASE NO. _____<br><br>[Removed from the Circuit Court of St. Louis County, Missouri, Case No. 18SL-CC02821]<br><br>JURY TRIAL DEMANDED |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE THAT DISH Network L.L.C. ("DISH"), defendant in the above action, hereby removes the above-referenced action from the Circuit Court of St. Louis County, Missouri, to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1332, § 1441, and § 1446 and the Class Action Fairness Act of 2005 ("CAFA"), as codified in 28 U.S.C. §§ 1332(d) and 1453.

1.     This removal is timely because it has been filed within 30 days of service, as required by 28 U.S.C. § 1446(b).

2.     Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81-2.03, copies of all process, pleadings, orders, and other documents on file with the Circuit Court for the County of St. Louis are attached hereto as Exhibit A.  A copy of the docket sheet is attached hereto as Exhibit B. DISH has not filed an answer or other response to the petition in the Circuit Court of St. Louis County prior to removal and is not aware of any currently pending motions in that court.  In accordance with 28 U.S.C. § 1446(d), DISH is providing notice of this removal to Plaintiff and is

filing a copy of this Notice of Removal with the Clerk of the Circuit Court of St. Louis County, Missouri.

3.      Defendants DISH Network Corp. and DIRECTV, L.L.C. consent to this removal. Copies of DISH Network Corp.'s and DIRECTV, L.L.C.'s consents to this removal are attached hereto as Exhibits C and D, respectively.

4.      Removal is warranted because (1) this is a diversity action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a); and (2) this is a class action as defined in 28 U.S.C. § 1332(d)(1) over which this Court has original jurisdiction pursuant to § 1332(d)(2)(A).

## BACKGROUND

5.      Plaintiff City of Creve Coeur, Missouri ("Creve Coeur"), brought this action on July 19, 2018 in the Circuit Court of the County of St. Louis, Missouri.  DISH received service on July 30, 2018.  Creve Coeur filed an amended petition on August 9, 2018.[1]

6.      Creve Coeur alleges that defendants DISH, DISH Network Corp., and DIRECTV ("Defendants") have been providing video programming to customers in Missouri municipalities while not paying video-service-provider fees.  Pet. ¶ 1.  Creve Coeur claims that because some Defendants' programming is provided via the Internet, Defendants are video-service providers within the meaning of the Missouri 2007 Video Service Providers Act.  *See* Sec. 67.2675, R.S. Mo., *et seq*.  Creve Coeur claims that Defendants owe the municipality 5% of their gross revenues earned in Creve Coeur during the preceding five years and for the duration of this litigation.  Pet. ¶¶ 3, 5; *see also* Pet. at pp. 13-14.

---

[1] All citations are to the First Amended Petition.

7.     Creve Coeur has brought this action as a putative class action.  Creve Coeur purports to represent a class of "all Missouri political subdivisions that collect video-service-provider fees, and in which Defendants have provided or continue to provide video service." *Id*. ¶ 11.  Among other relief, Plaintiff purports to seek, on behalf of itself and each putative class member, alleged video-service-provider fees, interest, and penalties, along with attorneys' fees. *Id*. ¶ 56.  Plaintiff also seeks injunctive relief.  *Id*. ¶¶ 51, 54.

### VENUE

8.     Venue is proper in this Court under 28 U.S.C. § 1441(a) because the removed action was filed in the Circuit Court of the County of St. Louis in the State of Missouri, which is within this district and division.

### PARTIES

9.     Creve Coeur is a Missouri municipal corporation.  Pet. ¶ 4.

10.     DISH Network Corporation is incorporated under the laws of the State of Nevada, with its principal place of business in Colorado.  *Id*. ¶ 7.  DISH Network L.L.C. is organized under the laws of the State of Colorado, with its principal place of business in Colorado.  *Id*. ¶ 7. The sole member of DISH Network L.L.C. is DISH DBS Corporation, which is incorporated under the laws of the State of Colorado and has its principal place of business in Colorado. DIRECTV, L.L.C. is a California limited liability company with its principal place of business in California.  Its sole member is DIRECTV Holdings L.L.C., a Delaware limited liability company with its principal place of business in California.  DIRECTV Holdings L.L.C.'s sole member is the DIRECTV Group, Inc., a Delaware corporation, with its principal place of business in California.

11.     Pursuant to 28 U.S.C. ¶ 1332(c)(1), DISH Network Corporation is a citizen of Nevada and Colorado.  DISH Network L.L.C. is a citizen of Colorado.  DIRECTV, LLC is a

3

citizen of California and Delaware.  No defendant is a citizen of Missouri, while every member of the putative class is a citizen of Missouri.

12.     Therefore, complete diversity exists.  28 U.S.C. § 1332(a)(1).

**REMOVAL UNDER 28 U.S.C. § 1332(a)**

13.     As there is complete diversity among the parties, this Court has original jurisdiction as long as the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

14.     Although Creve Coeur does not plead a specific sum of damages, the amount in controversy exceeds $75,000 exclusive of costs and interests.

15.     To ascertain the amount in controversy, a court conducts a fact intensive process to determine "not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are . . . ." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002); *see also Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009).  A fact finder could find that Plaintiff Creve Coeur seeks an amount in controversy greater than $75,000.

16.     Creve Coeur seeks all video-service-provider fees allegedly owed for the past five years and for the duration of this litigation, along with penalties and attorneys' costs.[2]

17.     Based on a review of DISH's corporate records, DISH's aggregate gross revenues from subscribers located in Creve Coeur in the past five years exceed $1,500,000.  Declaration of Andrew Ashamalla, ¶ 5, attached hereto as Exhibit E. Because Creve Coeur is seeking 5% of the

---

[2] DISH discusses alleged damages and other allegations by the Plaintiff for purposes of determining the amount in controversy only and it does not admit any liability and denies that it is liable in any way.

4

Defendants' operating revenues in Creve Coeur for each quarter of the past five years, the damages sought by Creve Coeur exceed $75,000.[3]

18.     Creve Coeur also requests injunctive relief. Injunctive relief is properly included in the amount-in-controversy calculation. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). The value of injunctive relief is evaluated "not [based on] how a plaintiff subjectively values a right" but based on "the actual value of the object of the suit." *Usery v. Anadarko Petroleum Corp*., 606 F.3d 1017, 1019 (8th Cir. 2010). Creve Coeur explicitly seeks injunctive relief in each of its claims. *See* Pet. ¶ 49 and WHEREFORE clauses.  It contends generally that the Defendants should be enjoined from engaging in business within the boundaries of its jurisdiction and deriving gross revenues therefrom without paying the required video-service-provider fees.  *Id*. Thus, if Creve Coeur succeeds on the merits of its claims, DISH will be deprived of five percent of its gross revenues in the Creve Coeur area going forward. This amount far exceeds $75,000, given that the $75,000 threshold is satisfied based on DISH's revenues over the past five years and the injunctive relief may be in effect for a longer period going forward.  *See* Ashamalla Decl., ¶ 5.  This will further increase the amount in controversy, which already exceeds $75,000.

19.     Attorneys' fees also may be counted toward the amount in controversy.  *See Crawford v. F. Hoffman-La Roche Ltd*., 267 F.3d 760, 766 (8th Cir. 2001).  There is a split in authority regarding the counting of future attorney's fees, but the majority of district courts in this Circuit have permitted them to be counted.  *See McNamee v. Knudsen & Sons*, 2016 WL 827942 at *2 n.2 (E.D. Mo. March 3, 2016).  Creve Coeur has retained at least six named

---

[3] Five percent of $1,500,000 is $75,000.  Notably, Creve Coeur would have to be owed a minimum of $3,750 per quarter for the amount of controversy to be met. ($3,750 * 4 quarters * 5 years = $75,000.)  This amount is easily met here.

counsel for this action.  Pet. ¶15.  These counsel are experienced class-action litigators, *id*. ¶ 15, who will likely spend significant time on this complex claim, potentially resulting in significant attorneys' fees.

20.     When attorneys' fees for the six named attorneys in this complicated class action and the value of the requested injunctive relief are added, the resulting sum exceeds $75,000 by an even greater amount.

21.     Therefore, this Court has original jurisdiction, as the requirements under 28 U.S.C. § 1332(a) are met.

### REMOVAL UNDER CAFA

22.     Separately, this action is removable under CAFA.  28 U.S.C. § 1332(d).  Federal courts possess original jurisdiction for a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  *Id*. § 1332(d)(2).  CAFA explicitly requires that claims be aggregated.  *Id*. § 1332(d)(6).  Finally, the proposed class size must also exceed 100.  *Id*. § 1332(d)(5)(B).

23.     Creve Coeur proposes a class of "all other Missouri political subdivisions similarly situated."  Pet. ¶ 11.  Although Creve Coeur does not provide a definitive number of members of its class, it claims that the class comprises "at least 40 Missouri municipalities."  *Id*. ¶ 12.  Notably, its claim appears to understate the proposed class size dramatically.  The proposed class is all "Missouri political subdivisions that collect video-service-provider fees," a number that is potentially quite large.  Assuming that the class is limited to just municipalities,

6

there are at least 640 potential class members and potentially more.[4]  Most municipalities likely assess video-service-provider fees; assuming, conservatively, that only one-third do, it would still result in a class with over 200 members.  Thus, for a Missouri-wide class, there are likely over 200 class members in Plaintiff's proposed class.

24.     There is minimal diversity, because, as established above, there is complete diversity among the parties.

25.     Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).  To determine the amount in controversy, the Court assumes the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) ("[W]hen determining the amount in controversy, the question is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." (internal quotation marks omitted)); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755-56 (11th Cir. 2010) ("[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.").

26.     For the amount in controversy, accepting the allegations in the petition, the fact finder could easily conclude that the putative class action exceeds $5,000,000 in aggregated claims.  Based on a review of DISH's corporate records, DISH's aggregate gross revenues in Missouri for the past five years exceed $100,000,000.  Ashamalla Decl., ¶ 4.  In fact, five percent of that gross revenue is well over ten times greater than the $5,000,000 threshold.  *Id.*  Looking

---

[4] *MML Membership Opportunities*, Missouri Municipal League, https://mocities.site-ym.com/page/join (an organization representing municipalities in Missouri states that it has at least 640 municipalities as members) (last visited Aug. 25, 2018).

at it another way, as noted above, the class could consist of 640 or more members.  Assume, again conservatively, that the class is comprised of only 200 members—fewer than one-third of the potential class members.  Each member would need claim only $1,250 per quarter in video-subscriber-fees for the aggregate claim to exceed $5,000,000.[5]  This would not be difficult to reach, especially as the size of many of the municipalities means that Defendants could have thousands of subscribers in those municipalities.  Accordingly, the aggregated claim easily surpasses $5,000,000 by progressively greater amounts as the class size grows.

27.     Second, Plaintiff also requests injunctive relief. Injunctive relief is properly included in the amount-in-controversy calculation. *Hunt,* 432 U.S. at 347. The value of injunctive relief is evaluated "not [based on] how a plaintiff subjectively values a right" but based on "the actual value of the object of the suit." *Usery*, 606 F.3d at 1019. When measuring the value of injunctive relief for CAFA jurisdictional purposes, courts in this Circuit consider the cost to a defendant of complying with an injunction in determining the amount in controversy. *See Adams v. Am. Family Mut. Ins. Co*., 981 F. Supp. 2d 837, 849-51 (S.D. Iowa 2013); *Toller v. Sagamore Ins. Co*., 558 F. Supp. 2d 924, 930-31 (E.D. Ark. 2008). Plaintiff explicitly seeks injunctive relief in each of its claims. *See* Pet. ¶ 49 and WHEREFORE clauses.  It contends generally that the Defendants should be enjoined from engaging in business within the boundaries of Plaintiff and class members and deriving gross revenues therefrom without paying the required video-service-provider fees.  *Id*. Thus, if Plaintiff succeeds on the merits of its claims, DISH will be deprived of five percent of its gross revenues in these jurisdictions going forward. This amount far exceeds $5 million, given that the $5 million threshold is satisfied

---

[5] 200 class members would claim damages for 20 payments (5 years * 4 quarters per year). Dividing $5,000,000 by 4,000 (20 payments * 200 municipalities) results in $1,250 in damages per quarter per class member, which is sufficient to satisfy the threshold for CAFA removal.

based on DISH's revenues over the past five years and the injunctive relief may be in effect for a longer period going forward.  *See* Ashamalla Decl., ¶ 4.  This will further increase the amount in controversy, which already exceeds $5 million.

28.     Finally, attorneys' fees also will make the claim in aggregate greater than $5,000,000.  The class could encompass over 640 members, each of whom could demand detailed accounting of revenues for their municipality from each defendant.  Defendants will defend themselves vigorously in this action, as is their right, because the Plaintiff proposes a novel theory that would impose substantial burdens on the Defendants.  The six named attorneys will likely need more attorneys and support staff to help manage the case and assess claims.  Due to the complexity of the claim and the number of attorneys involved on the plaintiff's side, the attorneys' fees could themselves reach over $5,000,000 in this class action.

29.     In sum, the amount in controversy meets the $5,000,000 statutory requirement, there are at least 100 members of this class, and there is minimal diversity.  Therefore, this case belongs in federal court.  *Raskas*, 719 F.3d at 888.

30.     Neither CAFA's "local controversy" nor its "home state" exceptions apply to this case.

31.     The local controversy exception only applies if, at a minimum, the case involves at least one in-state defendant from whom significant relief is sought. 28 U.S.C. § 1332(d)(4)(A)(ii); *see also O'Shaughnessy v. Cypress Media, L.L.C.*, 2014 WL 1791065, at *5 (W.D. Mo. May 6, 2014) (local controversy exception did not apply where only defendant was not a Missouri citizen). None of the Defendants is a citizen of Missouri.

32.     For the home state exception to apply, all primary defendants must be citizens of the state in which the case is filed. 28 U.S.C. § 1332(d)(4)(B); *see also Sundy v. Renewable*

*Envtl. Sols., L.L.C.*, 2007 WL 2994348, at *4 (W.D. Mo. Oct. 10, 2007). Again, none of the

Defendants are citizens of Missouri, and this exception does not apply either.

## RESERVATION OF RIGHTS AND
## REQUEST FOR ADDITIONAL BRIEFING

33.     By removing this matter, DISH does not waive and expressly reserves any rights

it may have, including, without limitation, all available arguments and affirmative defenses.

DISH does not concede that class certification is appropriate or that Plaintiff is entitled to any

recovery whatsoever. For purposes of removal, the question is not whether class certification is

appropriate or whether plaintiff will recover any amount for any particular time period. *Raskas*,

719 F.3d at 887.

34.      In the event Plaintiff files a request to remand, or the Court considers remand *sua*

*sponte*, DISH respectfully requests the opportunity to submit additional argument and/or

evidence in support of removal.

## CONCLUSION

35.     For all of the foregoing reasons, removal of this case to this Court is proper

pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.


Dated: August 29, 2018                          Respectfully submitted,


Pantelis Michalopoulos                      By:/s/  *Jeffrey L. Schultz*
Markham Erickson                            Jeffrey L. Schultz #56553MO
STEPTOE & JOHNSON LLP                        7700 Forsyth Blvd., Suite 1800
1330 Connecticut Avenue, N.W.                St. Louis, Missouri  63105
Washington, DC  20036                        (314) 621-5070
(202) 429-3000                               (314) 621-5065 (fax)
(202) 429-3902 (fax)                         jschultz@armstrongteasdale.com
pmichalopoulos@steptoe.com
merickson@steptoe.com                        ATTORNEYS FOR DEFENDANTS DISH
                                             NETWORK L.L.C AND DISH NETWORK
                                             CORP.


10